IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **QATALYS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:14-cv-1784-L** |
| | § | |
| **MOUNTAIN MEDICAL** | § | |
| **TECHNOLOGIES, INC. d/b/a** | § | |
| **CYRAMEDX, ADVANCED SOFTWARE** | § | |
| **TECHNOLOGIES, INC., IVAN** | § | |
| **STERN, JOHN WRIGHT, and** | § | |
| **PHILIP KEANE,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant Mountain Medical Technologies and Advanced Software
Technologies' Motion to Dismiss, filed July 16, 2014. After careful consideration of the motion,
pleadings, record, and applicable law, the court **grants** Defendants' Motion to Dismiss.

## I. Factual and Procedural Background

### A.       Procedural Background

This action was initially filed on May 15, 2014. On June 25, 2014, Plaintiff Qatalys, Inc.
("Plaintiff" or "Qatalys") filed its First Amended Complaint ("Amended Complaint") against
Mountain Medical Technologies, Inc. d/b/a CyramedX ("MMT"); Advanced Software Technologies,
Inc. ("AST"); and Ivan Stern, John Wright, and Philip Keane (collectively, "Individual Defendants").
Plaintiff alleges claims for breach of contract or, in the alternative, unjust enrichment/quantum
meruit; suit on a sworn account; declaratory judgment regarding intellectual property rights;
preliminary and permanent injunctive relief as to use of the intellectual property rights; fraud; and

fraud in the inducement.  On July 16, 2014, MMT and AST (collectively, "Defendants") moved to

dismiss Plaintiff's claims for declaratory judgment, preliminary and permanent injunctive relief, and

unjust enrichment/quantum meruit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### B.    Factual Background

Qatalys alleges that in December of 2009 it entered into a Master Services Agreement

("MSA")[1]  with MMT.  Qatalys alleges that the purpose of the MSA was "for Qatalys to deploy a

team of software engineers from Chennai, India to perform quality assurance and testing services for

MMT."  Pl.'s Am. Compl. ¶ 4.1.  AST was not a party to the MSA and did not sign the MSA. Pl.'s

Am. Compl. ¶ 4.3.

Qatalys further contends that, in 2012, MMT "change[d] the role and scope of Qatalys's work

from that of quality assurance and testing to that of software developer."  Pl.'s Am. Compl. ¶ 4.2.

Qatalys alleges that after this role change, the parties did not enter into a new written agreement, but

that the Defendants nonetheless entered into a contract with Qatalys.  Pl.'s Am. Compl. ¶ 5.1.

Qatalys contends that MMT and AST "agreed to pay Plaintiff for software development work and

related maintenance activities of software applications."  Pl.'s Am. Compl. ¶ 4.5.

Qatalys maintains that after the first month of this "new arrangement," neither MMT nor

AST paid an invoice in full.  Pl.'s Am. Compl. ¶ 4.4.  Though the Individual Defendants allegedly

provided constant assurances that payment would occur, including written assurances through e-mail,

Qatalys contends that the parties failed to pay Qatalys for the work performed.  The allegedly unpaid

invoices total $482,981.  Qatalys contends that MMT and AST had "no intention of paying

whatsoever."  Pl.'s Am. Compl. ¶ 4.10.

---

[1] For the reasons described in Section III(A), the court treats the MSA as part of the pleadings.

Specifically, Qatalys alleges that MMT and AST entered into a contract with Qatalys by requesting work from Qatalys.  Pl.'s Am. Compl. ¶ 5.1. Qatalys alleges that the Defendants then breached that contract.  In the alternative, Qatalys makes a claim of unjust enrichment/quantum meruit, arguing that the services provided by Qatalys conferred a benefit on MMT and AST, and that Defendants would be unjustly enriched if allowed to retain that benefit without payment.  Pl.'s Am. Compl. ¶ 5.5.

Qatalys further contends that it retains the intellectual property rights related to the software developed or modified under the alleged new agreement with AST and MMT because such work was outside the scope of the original MSA.  Qatalys acknowledges that its claim to intellectual property rights stands only if the terms of the MSA do not apply to the work performed pursuant to the alleged new agreement. Pl.'s Am. Compl. ¶ 7.2.  According to Qatalys, this is so because, under the MSA, Qatalys expressly waived its interest in "any Intellectual Property Rights relating to any software, designs or Applications, or modifications thereto, created pursuant to services rendered under this Agreement."  Defs.' App. 8.

## II.      Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

**Memorandum Opinion and Order - Page 4**

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

III.    **Analysis**

   **A. Matters that the Court will Consider**

Before addressing the substantive arguments raised in Defendant's Motion to Dismiss ("Motion"), the court must first determine whether it can properly consider the text of the MSA and the Statements of Work ("SOW") attached to Defendants' Motion. The court must also determine whether it can properly consider the documents attached to Plaintiff's Response to the Motion to

Dismiss ("Response"), as well as the letter from Mr. Charles McBeth to Defendant Philip Keane attached to Defendants' Reply.  As noted, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims." *Collins*, 224 F.3d at 498-99  (internal quotation marks omitted).  As such, the MSA becomes part of the pleadings because Plaintiff refers to this document in its Amended Complaint and because it is a central aspect of Plaintiff's claims.  Pl.'s Am. Compl. ¶ 4.1.  Thus, the court will consider the text of the MSA.

The court will also consider the SOW attached to Defendants' Motion.  These statements are referred to in Plaintiff's Amended Complaint and are central to Plaintiff's claims.  *See Collins*, 224 F.3d at 498-99 (noting that documents attached to a defendant's motion are considered if the plaintiff's complaint refers to the documents and the documents are central to the plaintiff's claims).  The invoices included in the Amended Complaint reference the SOW attached to Defendants' Motion.  For example, "SOW#2012.13" is listed on the first invoice in Plaintiff's Exhibit A.  Pl.'s Ex. A, 1. All four SOWs included in Defendants' Motion are similarly referenced in the invoices attached to the Amended Complaint.  *See, e.g.,* Pl.'s Ex. A, 1-3, 7.  As these SOWs are central to Plaintiff's claims, the court will consider all attached to Defendants' Motion.

The court, however, will not consider the attachments to Plaintiff's Response, as these documents were not part of the Amended Complaint.  Moreover, the court will not consider the letter from Mr. Charles McBeth attached to Defendants' Reply.  By waiting and attaching this letter to its reply, Defendant did not provide Plaintiff with a fair opportunity to address the letter.  Furthermore, the letter is not referenced in the Amended Complaint and is not central to Plaintiff's claims.

**B.     Choice of Law**

As a preliminary matter, the court must address the MSA's choice of law provision. According to Section 14 of the MSA, the agreement is governed by New York law.[2]  As discussed below, despite Plaintiff's assertions to the contrary, the court nonetheless finds that the MSA governs the work Plaintiff performed for Defendants after 2012.  Based on the language in the MSA, the court applies New York law.

**C.     Unjust Enrichment**

**1.  The MSA governs the work performed under the alleged new agreement.**

Defendants contend that the dispute underlying Plaintiff's unjust enrichment/quantum meruit claim is governed by the MSA and thus that Plaintiff's claim should be dismissed.  Defs.' Mot. to Dismiss 1-2.  For support, Defendants cite *Air Atlanta Aero Engineering Limited v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195-96 (S.D.N.Y. 2009), for the proposition that a plaintiff cannot recover on a quasi-contractual theory when the claim "arises out of a written agreement that governs the same subject matter."  Defs.' Mot. to Dismiss 8.  Defendants further point to *The Independent Bankersbank v. Canyon Community Bank*, 13 F. Supp. 3d 661 (N.D. Tex. 2014), and assert that a plaintiff may plead a quasi-contractual claim in the alternative only when there is a "bona fide dispute regarding the existence or validity of a written contract."  Defs.' Mot. to Dismiss

---

[2] "[A] federal court sitting in diversity [applies] the choice of law rules of the forum." *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990); *see also TBI Exploration v. Belco Energy Corp.*, 220 F.3d 586 (5th Cir. 2000) ("Because this case [filed in Texas] comes to us under diversity jurisdiction, we must honor the choice of law rules under Texas law.")  Thus, "[u]nder Texas choice-of-law principles, contractual choice-of-law clauses are given effect if the law chosen by the parties (1) has a reasonable relationship to the parties and the chosen state and (2) is not contrary to a fundamental policy of the state." *Provident Fin. Inc. v. Strategic Energy L.L.C.*, 404 F. App'x 835, 839 (5th Cir. 2010); *see also Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990)) (same); *see also* Tex. Bus. & Com. Code Ann. § 1.301.

8.  Defendants then argue that the MSA is a valid written agreement that governs the entirety of the disputed subject matter. *Id.*

Plaintiff's claim for breach of contract or, in the alternative, unjust enrichment, is based on an alleged "new arrangement" between the parties.  Pl.'s Am. Compl. ¶ 4.4.  Plaintiff contends that AST and MMT "entered into a contract" with Qatalys when Defendants requested that work be performed by Qatalys.  Pl.'s Am. Compl. ¶ 5.1.  Specifically, Plaintiff asserts that this new arrangement "change[d] the role and scope of Qatalys's work from that of quality assurance and testing to that of software developer."  Pl.'s Am. Compl. ¶ 4.2.

Plaintiff's assertion that such software development was a new arrangement between the parties contradicts express language of the MSA.  The "Purpose" section of the MSA states that Plaintiff is to engage in "*software development work* and related maintenance activities of software applications . . . for MMT."  Defs.' App. 1 (emphasis added).  Based on this language, it is clear that Qatalys and MMT intended to include software development as part of their agreement under the MSA.

Moreover, the allegations described in the Amended Complaint are identical to the purpose section of the MSA.  In describing the alleged new arrangement between the parties, the  Amended Complaint states, "MMT and AST agreed to pay Plaintiff for *software development work and related maintenance activities of software applications*."  Pl.'s Am. Compl. ¶ 4.5 (emphasis added).  This mirrors the precise language of the MSA cited in the preceding paragraph.  This characterization further indicates that the MSA contemplated the type of work Qatalys performed under the alleged new agreement.

Finally, each Statement of Work, included in Defendants' Motion, "contain[s] a description of the tasks to be performed by [Plaintiff]" and expressly incorporates the MSA. *See, e.g.,* Defs.' App. 2, 28 ("This Statement of work (SOW) becomes part of the Master Services Agreement between AST, Mountain Medical Technologies, Inc., (MMT) and Qatalys."). Because every invoice attached to Plaintiff's Amended Complaint references one of these Statements of Work, it is clear that the work performed by Qatalys under the alleged new agreement was performed pursuant to the MSA.

When a plaintiff's allegations in a complaint directly contradict language in a contract that formed the basis of the lawsuit, a court need not give credence to those allegations. *See Gant v. Wallingford Board. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995) ("'[I]f the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.'") (quoting *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.") (internal quotation marks omitted); *National Football League Properties, Inc. v. Dallas Cowboys Football Club Ltd.,* 922 F. Supp. 849, 852-53 (S.D.N.Y. 1996) ( "To the extent that the content of the contracts conflicts with allegations about those contracts made in the Complaint, the actual language of the contracts must control. However, Plaintiff is not precluded from demonstrating that terms contained in the contracts are contradicted by the actual conduct of the contracting parties.") (citations omitted); *see also Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) (dismissing a plaintiff's complaint because it contradicted documents included in the pleadings); *Associated Builders*, 505

**Memorandum Opinion and Order - Page 9**

F.2d at 100 ("Conclusory allegations and unwarranted deductions of fact are not admitted as true . . . especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.  If the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."). As such, the court does not take as true Plaintiff's allegations that the work it performed under the alleged new arrangement fell outside the scope of the MSA.  Instead, the court finds that the MSA governed such work.

### 2. Because a valid agreement exists, a claim for unjust enrichment fails.

Under New York law, a party cannot seek recovery under a quasi-contractual theory if a valid, enforceable agreement governs the subject matter at issue.  *Clark-Fitzpatrick, Inc. v Long Island Rail Road Co.*, 516 N.E.2d 190 (N.Y. 1987) (affirming dismissal of a quasi-contractual claim where a valid agreement existed between the parties and the claimant sought recovery after its full performance of the contract); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) ("*Clark-Fitzpatrick* precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter . . . . As we have determined that valid, enforceable implied-in-fact contracts existed between [the parties] and that these contracts governed the particular subject matter of this case, the unjust enrichment claims . . . are precluded.") (citations omitted).

A party may, however, plead unjust enrichment in the alternative if there is a dispute as to whether the contract governs the issue at hand.  *See ARB Upstate Commc'ns LLC v. R.J. Reuter, L.L.C.*, 940 N.Y.S.2d 679 (N.Y. App. Div. 3d Dep't 2012) ("While a quasi contract recovery, such as through an unjust enrichment cause of action, is precluded where a valid and enforceable contract applies to the dispute, a party need not elect its remedies and may proceed on alternative theories if

a disagreement exists concerning whether the contract covers the situation at issue."); *see also Baxter v. PNC Bank Nat'l Ass'n*, 541 F. App'x 395, 397 (5th Cir. 2013) ("Claims for restitution and unjust enrichment sound in quasi-contract or contract implied in law. There can be no recovery based on these theories when the same subject matter is covered by an express contract."); *Johnson v. Wells Fargo Bank*, *NA*, 999 F. Supp. 2d 919, 929 (N.D. Tex. 2014) ("In this case, the subject matter of dispute   Plaintiff's payment of the Note   is expressly governed by contract, and Plaintiff has not pled, and cannot plead, a claim for unjust enrichment as a matter of law."). As discussed above, however, Plaintiff's work performed under the alleged new agreement falls squarely within the terms of the MSA, making this exception inapplicable.[3]   Therefore, Plaintiff cannot plead unjust enrichment  as an alternative claim.

Plaintiff alleges that it properly pleaded claims for unjust enrichment and quantum meruit. It argues that there is a dispute regarding whether there is a written agreement covering their claims; however, as discussed, the MSA precludes this argument. Plaintiff additionally argues that AST was not a party to the MSA and therefore its claims against AST "unquestionably should not be dismissed." Pl.'s Resp. 2.

Although AST is not a signatory to the MSA, under New York law, the existence of a valid, enforceable contract governing the subject matter at issue bars an unjust enrichment claim against third parties to the contract, as well. *See Vitale v.  Steinberg*, 764 N.Y.S.2d 236 (N.Y. App. Div. 1st Dep't 2003) ("[T]he existence of . . . an express contract governing the subject matter of plaintiff's

---

[3]  The court finds this exception inapplicable based upon Plaintiff's pleadings. While Plaintiff argues that the MSA does not govern this dispute, the MSA and SOWs demonstrate that the work for which Plaintiff seeks compensation is within the scope of the written agreement.  Additionally, Plaintiff's allegations merely reference a "new arrangement." Plaintiff never explicitly references an oral contract or an implied-in-fact contract; moreover, Plaintiff provides no allegations to support a conclusion that the parties intended this "new arrangement" to override the MSA, which is the written contract governing the relationship between Plaintiff and MMT.

claims, also bars the unjust enrichment cause of action as against the individual defendants, notwithstanding the fact that they were not signatories to that agreement."); *American Med. Ass'n v. United Healthcare Corp.*, No. 00 CIV. 2800 (LMM), 2007 WL 683974, at *1 (S.D.N.Y. Mar. 5, 2007) ("This Court follows the trend of both the New York state courts and the courts within this district in holding that, under New York law, a claim for unjust enrichment may be barred by a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract.").[4]  Therefore, Plaintiff may not proceed with its alternative unjust enrichment claim against MMT or AST.

### D.    Declaratory Judgment as to Intellectual Property Rights

Defendants argue for dismissal of Plaintiff's claim for declaratory judgment as to intellectual property rights because "the written agreement between Qatalys and MMT expressly provides that MMT owns all such rights." Defs.' Mot. to Dismiss 1.  Plaintiff concedes that it does not have a claim to "intellectual property rights in software or applications created pursuant to services rendered under the Master Services Agreement," but argues that it "made no such agreement related to services performed outside the scope of the Master Services Agreement." Pl.'s Am. Compl. ¶ 7.2. As discussed above, even when accepting Plaintiff's assertions as true and viewing them in the light most favorable to it, the work performed by Qatalys fell within the scope of the MSA.  Because

---

[4] The court notes that it would reach the same conclusion if it applied Texas law.  *See  Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 615 (Tex. App.—Eastland 2013, no pet.) (affirming summary judgment against a plaintiff on its unjust enrichment claim because of the existence of a contract covering the subject matter, even though "plaintiff [wa]s seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance.") (citations omitted); *Hester v. Friedkin Companies, Inc.*, 132 S.W.3d 100, 106 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that the rule barring recovery when an express contract covers the services "is applicable not only when the plaintiff is seeking to recover in quantum meruit from the party with whom he expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who benefitted from its performance." ); *Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.*, 42 S.W.3d 149, 160 (Tex. App.—Amarillo 2000, no pet.) (noting the same).

**Memorandum Opinion and Order - Page 12**

Plaintiff concedes that it does not have a claim to intellectual property rights for work created pursuant to the MSA, its claim seeking declaratory relief fails as a matter of law.  Accordingly, Plaintiff has failed to state a claim upon which relief can be granted for declaratory judgment relief.

### E.    Injunctive Relief

#### 1.    Standard for Preliminary Injunction

There are four prerequisites for the extraordinary relief of a preliminary injunction.  A court may grant a preliminary injunction only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of the State of Florida  v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc)).  The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted.  *Mississippi Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993.  Otherwise stated, if a party fails to meet any of the four requirements, the court cannot grant the preliminary injunction.

#### 2.    Standard for Permanent Injunction

Plaintiffs request that the court permanently enjoin Defendant from further infringements on its Copyrighted Recordings.  The court may issue a permanent injunction "to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  The elements of a permanent injunction are essentially the same as those for a preliminary injunction "with the exception that the plaintiff must

show actual success on the merits rather than a mere likelihood of success." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

Because Plaintiff's claim regarding intellectual property rights will be dismissed, and because Plaintiff agreed to withdraw its claims if the MSA were found to apply, Plaintiff's claims for preliminary and permanent injunctive relief will also be dismissed. Pl.'s Am. Compl. ¶¶ 8.2, 9.1. Further, in light of the court's rulings, Plaintiff cannot establish each of the elements necessary to obtain a preliminary or permanent injunction.

### IV. Conclusion

For the reasons herein stated, the court **grants** Defendants' Motion to Dismiss with respect to Plaintiff's claims for declaratory judgment, preliminary and permanent injunctive relief, and unjust enrichment/quantum meruit, and **dismisses with prejudice** these claims. Plaintiff's claims for breach of contract and suit on a sworn account remain against Defendants, and Plaintiff's claims for fraud and fraud in the inducement remain against the Individual Defendants.

**It is so ordered** this 27th day of March, 2015.

Sam A. Lindsay
United States District Judge